[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 19, 2009
THOMAS K. KAHN
CLERK

No. 07-15397
Non-Argument Calendar

_____

Agency Nos. A98-614-603
A98-614-604


RIKHARD BORCHTCHEV,
NATALLIA TKACHOVA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 19, 2009)**

Before EDMONDSON, Chief Judge, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Rikhard Borchtchev and his wife, Natallia Tkachova, natives and citizens of Belarus,[1] petition for review of the adoption and affirmance by the Board of Immigration Appeals ("BIA") of the decision of the Immigration Judge ("IJ"). The decision denied asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). No reversible error has been shown; we dismiss the petition in part and deny it in part.

We first address Borchtchev's asylum arguments. On appeal, he asserts that he demonstrated changed circumstances to excuse his untimely asylum application and otherwise makes arguments about his eligibility for asylum. The government correctly notes that we lack jurisdiction to consider Borchtchev's asylum claims because the IJ and the BIA concluded that his asylum application was untimely and that he failed to demonstrate an exception to the filing deadline contained in 8 U.S.C. § 1158(a)(2)(B).[2] Chacon-Botero v. U.S. Attorney Gen., 427 F.3d 954, 957 (11th Cir. 2005) (we lack jurisdiction, under section 1158(a)(3), to review an IJ's untimeliness ruling).

---

[1]Borchtchev included his wife as a derivative in his asylum application; so our decision about Borchtchev also applies to her.

[2]Borchtchev entered the United States in 1998 and filed his asylum application in 2004.

We have jurisdiction over Borchtchev's petition for review of claims for withholding of removal and CAT relief. Borchtchev sought relief based on his political opinion: he described himself as a military historian and military antiques collector and dealer who disagreed with Belarus's presentation of its history in World Wars I and II. Borchtchev alleged that, in May 1997, he was arrested at his workshop because of his political opinion and detained and beaten; he received medical treatment after his detention by a family friend who was a doctor. After this arrest, he claimed, police started monitoring the activities around his workshop. He was arrested again in August 1998 and told that his antiques collection was illegal and subject to confiscation; he was again detained, beaten, and threatened.

At his asylum hearing, Borchtchev testified that he appeared on state-controlled television three times to talk about war history and his antiques collection, expressing anti-government positions each time. After his third appearance, he claimed, he came under heightened scrutiny from the government. He stored his antiques collection at his parents' house in Belarus and had sent several shipments of military history books to his parents in Belarus from the United States, but claimed that the last shipment had been confiscated by the government.

The IJ determined that Borchtchev was not credible and denied him relief.

3

The IJ based this determination on the following things: (1) Borchtchev's inability to answer questions directly[3]; (2) the implausibility of Borchtchev's claim that he appeared on television expressing anti-government sentiments three times, in the light of his testimony that television was entirely state-run in Belarus; and (3) his failure to produce corroborating evidence about the events that happened to him such as documents showing treatment for his alleged injuries or statements from his parents about the shipments he allegedly sent to them from the United States. The BIA agreed with the IJ's adverse credibility determination and also noted that Borchtchev was arrested and beaten before his first television appearance, even though he claimed to have come under government scrutiny after his third television appearance.

We review the decisions of the IJ and the BIA in this case. See Savoury v. U.S. Attorney Gen., 449 F.3d 1307, 1312 (11th Cir. 2006) (where the BIA expressly adopts and affirms the IJ's decision and adds its own analysis, we review the IJ's decision as supplemented by the BIA). An IJ's factual determination that an alien is unentitled to relief "must be upheld if it is supported by substantial evidence." Mazariegos v. U.S. Attorney Gen., 241 F.3d 1320, 1323 (11th Cir. 2001).

An alien seeking withholding of removal must show that his life or freedom

---

[3]The IJ described Borchtchev's answers to questions as "an exercise in non-sequiturs."

would more likely than not be threatened upon return to his country because of his race, religion, nationality, political opinion, or membership in a particular social group. Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). An alien is entitled to CAT protection if he shows that he is "more likely than not to be tortured in the country of removal." Jean-Pierre v. U.S. Attorney Gen., 500 F.3d 1315, 1323 (11th Cir. 2007) (quoting 8 C.F.R. § 208.16(c)(4)).

An adverse credibility determination alone may be sufficient to support the denial of relief. Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (internal quotation omitted). But "an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." Id. "A credibility determination, like any fact finding, may not be overturned unless the record compels it." Id.

On appeal, Borchtchev argues that he demonstrated he more likely than not would suffer persecution and torture if returned to Belarus based on his prior arrests, the physical violence and threats he endured there, and the current country conditions. He asserts that the IJ and BIA erred in making the credibility determination because his testimony was consistent with his asylum application and the U.S. State Department's Belarus Country Report on Human Rights Practices for 2004.

The IJ and BIA provided specific and cogent reasons for the credibility

5

determination, which is supported by substantial evidence. See D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 819 (11th Cir. 2004).[4] Nothing in the record compels us to substitute our judgment on the issue. During his testimony, Borchtchev repeatedly did not answer directly the questions posed to him; the IJ frequently had to remind him to answer only the question asked. And the IJ and BIA noted the implausibility that Borchtchev would be asked to appear on state-controlled television two more times after initially expressing anti-government sentiments. While Borchtchev argues that he became a government target after his third television appearance, this assertion is belied by his testimony that he had been arrested and detained once before appearing on television about his antiques collection and allegedly was being monitored by the police after this arrest.[5] And while Borchtchev alleged that he encountered problems with the government because of his antiques collection, this collection apparently remains unharmed at his parents' house in Belarus.

In the light of Borchtchev's implausible testimony, the IJ and BIA correctly noted the need for -- and lack of -- corroborating evidence to support his claim.

_____

[4]The adverse credibility determination in this case is not governed by the REAL ID Act of 2005 because Borchtchev filed his asylum application after the Act's effective date. See Chen v. U.S. Attorney Gen., 463 F.3d 1228, 1231 (11th Cir. 2006).

[5]Borchtchev also failed to mention specifically these television appearances in his asylum application.

See Yang v. U.S. Attorney Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).  For example, he presented no medical documentation of his alleged injuries and treatment or documentation about his prior arrests and the shipments he sent to his parents house.[6] Borchtchev argues that the Country Report corroborates his claim. But while it may confirm that general conditions in Belarus are as Borchtchev says, including that the state controls the media, it does not tend to corroborate his personal claim that the government targeted him based on his controversial political views and practices.

In sum, the IJ and BIA provided cogent reasons for the credibility determination: and these reasons are supported by substantial record evidence.  See D-Muhumed, 388 F.3d at 819 (citations omitted).[7]

PETITION DISMISSED IN PART, DENIED IN PART.

---

[6]Borchtchev testified that he had a photograph taken by his father of the material that he sent to Belarus but did not submit the photo with his application because he did not think it was important.

[7]Borchtchev argues that the BIA did not make a separate finding about CAT relief; but the credibility determination also applied to the CAT relief claim because the same evidence was used to support the withholding of removal claim.  See Forgue, 401 F.3d at 1288 n.4.